1   R. Rex Parris (SBN 96567)
         rrparris@rrexparris.com
2   Alexander R. Wheeler (SBN 239541)
         awheeler@rrexparris.com
3   Kitty K. Szeto (SBN 258136)
         kszeto@rrexparris.com
4   **R. REX PARRIS LAW FIRM**
    43364 10th Street West
5   Lancaster, California 93534
    Telephone:  (661) 949-2595
6   Facsimile:   (661) 949-7524

7   Edwin Aiwazian (SBN 232943)
         edwin@aiwazian.com
8   **LAWYERS for JUSTICE, PC**
    410 West Arden Avenue, Suite 203
9   Glendale, California 91203
    Telephone:  (818) 265-1020
10  Facsimile:  (818) 265-1021

11  Attorneys for Plaintiff and the Settlement Class

12

13                  **UNITED STATES DISTRICT COURT**

14                  **CENTRAL DISTRICT OF CALIFORNIA**

15

16  CARLA LEIVA; individually, and on behalf )   Case No. 2:12-cv-01371-CBM-JEM
    of other members of the general public   )
17  similarly situated;                      )   **CLASS ACTION**
                                             )
18              Plaintiff,                   )   **PLAINTIFF'S NOTICE OF UNOPPOSED
                                             )   MOTION AND UNOPPOSED MOTION FOR
19         v.                                )   FINAL APPROVAL OF CLASS ACTION
                                             )   SETTLEMENT, ATTORNEYS' FEES, COSTS,
20  RAPID GAS, INC., a California corporation; )  AND SERVICE ENHANCEMENT AWARD;
    UNITED EL SEGUNDO, INC., a California    )   MEMORANDUM OF POINTS AND AUTHORITIES**
21  corporation; APRO, LLC, a Delaware limited )
    liability company; and DOES 1 through 10, )  [Filed Together with Declarations of Class
22  inclusive,                               )   Counsel (Alexander R. Wheeler and Edwin
                                             )   Aiwazian); Declaration of Class
23              Defendants.                  )   Representative (Carla Leiva); and [Proposed]
                                             )   Order]
24                                           )
                                             )   Date:          June 2, 2015
25                                           )   Time:          10:00 a.m.
                                             )   Courtroom:     2
26                                           )
                                             )
27  _____ )

28

**PLEASE TAKE NOTICE** that on **June 2, 2015** at **10:00 a.m.**, or as soon as this matter may be heard before the Honorable Consuelo B. Marshall in Courtroom 2 of the United States District Court for the Central District of California – Western Division located at 312 North Spring Street, Los Angeles, California 90012-4701, Plaintiff Carla Leiva will and hereby moves, *unopposed,* for an order granting final approval of:

1.      The class action settlement ("Settlement") on the grounds that the **$650,000.00** Settlement is fair and reasonable because:

- **516** Claimants timely submitted a valid Claim Form and will receive money from the Settlement;

- The **average payout** is approximately **$389.74** per Claimant before payroll taxes are deducted;

- The **maximum payout** is approximately **$701.75** per Claimant before payroll taxes are deducted;

- **No objections** were submitted to the Settlement, which means that the Class Members were satisfied and support final approval of the Settlement;

- **Only 6 Class Members opted out** of the Settlement;

2.      Attorneys' fees in the amount of **$200,000** to Class Counsel, which is *less than* the amount that will be paid out to the 516 Claimants, for **389** hours of attorney time spent working on the case from pre-filing investigation to the final approval hearing;

3.      Costs in the amount of **$19,952.09** to Class Counsel for litigation costs and expenses incurred, which is $5,047.91 *less than* the $25,000 allocated in the Settlement for costs;

4.      An enhancement award to Plaintiff in the total amount of **$2,000**, which was preliminarily approved by the Court on February 11, 2015, for her time and efforts in representing the Class as the Class Representative;[1]

/ / / /

/ / / /

---

[1]      Order Granting Preliminary Approval of Class Action Settlement and Certifying the Settlement Class [Dkt. 71] ("Preliminary Approval Order") at ¶ 5.

5.     Payment of **$3,750** to the California Labor and Workforce Development Agency, which was preliminarily approved by the Court on February 11, 2015, for its portion of the penalties under the Private Attorneys General Act;[2] and

6.     Payment of **$17,036** to Dahl Administration, LLC for settlement administration costs actually incurred.[3]

This motion is based on the following memorandum of points and authorities; the Declarations of Alexander R. Wheeler, Edwin Aiwazian, and Carla Leiva in support thereof; the [Proposed] Order lodged together with this motion, as well as upon the pleadings and other records on file with the Court in this matter, and upon such documentary evidence and oral argument as may be presented at or before the hearing on this motion.


DATED:  May 5, 2015                          **R. REX PARRIS LAW FIRM**


By: _/s/ Alexander R. Wheeler_____
                         Alexander R. Wheeler
                         Attorneys for Plaintiff and the
                         Settlement Class

---

[2]     Order Granting Preliminary Approval of Class Action Settlement and Certifying the Settlement Class [Dkt. 71] ("Preliminary Approval Order") at ¶ 6.

[3]     This amount is more than the $12,000 preliminarily approved by the Court to be paid out of the Settlement in settlement administration costs.  (Order Granting Preliminary Approval of Class Action Settlement and Certifying the Settlement Class [Dkt. 71] ("Preliminary Approval Order") at ¶ 9.)  Class Counsel proposes that the $5,036 cost increase be deducted from the $25,000 originally allocated towards Class Counsel's costs.

2

## TABLE OF CONTENTS

PAGE

1.  SUMMARY OF MOTION ................................................................................ 1

2.  PROCEDURAL HISTORY AND FACTUAL BACKGROUND ........................................ 2

3.  SUMMARY OF THE SETTLEMENT TERMS AND PLAN OF DISTRIBUTION ................ 3

4.  THE CLAIMS ADMINISTRATION PROCESS ...................................................... 4

5.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE
    CLASS ACTION SETTLEMENT ....................................................................... 4

    A.  The Proposed Settlement Resulted From Arm's-Length
        Negotiations Based Upon Extensive Investigation and Discovery ................ 5

    B.  The Risks Inherent in Continued Litigation Favors Final
        Approval of the Settlement. ....................................................................... 5

    C.  The Settlement is Fair, Reasonable, and Adequate ................................... 9

    D.  The Settlement Class Was Represented by Competent Counsel. ................. 9

    E.  There Are No Objections to the Settlement. ............................................ 10

6.  LEGAL STANDARD FOR ATTORNEYS' FEES AND IN A CLASS ACTION SETTLEMENT ........... 10

    A.  The Percentage Fee Method ................................................................... 11

        1.  The Common Fund Doctrine .......................................................... 11

    B.  Evolution of the Percentage Fee Method ................................................ 12

    C.  The Settlement Has Created A Common Fund From Which A
        Percentage Fee Should Be Awarded ....................................................... 14

7.  CLASS COUNSEL'S REQUEST FOR APPROXIMATELY 30.8% OF THE SETTLEMENT IS
    JUSTIFIED BY NINTH CIRCUIT PRECEDENT ................................................... 15

    A.  AN UPWARD ADJUSTMENT OF THE NINTH CIRCUIT'S
        BENCHMARK IS APPROPRIATE ............................................................... 17

        1.  The Risks Assumed by Class Counsel Favor the Fee Award Sought....... 17

        2.  Class Counsel Obtained an Excellent Result for the Class ................... 18

i

TABLE OF CONTENTS

PAGE

3.    Class Counsel's Award is Relatively Modest............................................ 19

4.    Class Counsel Obtained Swift and Efficient Relief for the Class............. 19

5.    The Skill and Reputation of Plaintiff's Counsel Justifies the
       Fee Requested ............................................................................. 20

B.    FEDERAL COURTS ROUTINELY AND REGULARLY AWARD FEES IN
       EXCESS OF THE FEE REQUESTED.............................................................. 20

8.    THE ATTORNEYS' FEES SOUGHT ARE ALSO APPROPRIATE UNDER THE
       LODESTAR/MULTIPLIER METHOD OF FEE CALCULATION .................................... 21

9.    COSTS TO BE REIMBURSED TO CLASS COUNSEL ..................................... 23

10.   PAYMENT TO DAHL ADMINISTRATION, LLC IS FAIR AND REASONABLE ......................... 23

11.   THE SERVICE ENHANCEMENT AWARD IS FAIR AND REASONABLE..................................... 24

12.   CONCLUSION............................................................................................. 26

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF AUTHORITIES**

**PAGE(S)**

**Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*

   (2000) 85 Cal.App.4th 1135 ................................................................. 5, 10

*Allapattah Services, Inc. v. Exxon Corp.,*

   454 F.Supp. 2d 1185 (S.D.Fla. 2006) ................................................. 17

*Armstrong v. Whirlpool Corp.,*

   2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007) .................................. 18

*Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.,*

   480 F.Supp. 1195 (S.D.N.Y. 1979), *aff'd* 622 F.2d 1106 (2nd Cir. 1980) ............................... 21

*Blum v. Stenson*

   (1984) 465 U.S. 886 ................................................................. 13, 15

*Boeing Co. v. Van Gernert*

   (1980) 444 U.S. 472 ................................................. 11, 14, 15, 16, 21

*Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.,*

   No. 12-CV-05259-JST, 2014 WL 2967474 (N.D. Cal. June 30, 2014) ................................... 25

*Brotherton v. Cleveland,*

   141 F.Supp.2d 907 (S.D.Ohio 2001) ................................................. 26

*Brytus v. Spang & Co.*

   (3rd Cir. 2000) 203 F.3d 238 ................................................. 15

**TABLE OF AUTHORITIES**

**PAGE(S)**

**Cases**

*Crampton v. Takegoshi*
  (1993) 17 Cal.App.4th 308 .......................................................................... 11

*Dolgow v. Anderson,*
  43 F.R.D. 472 (E.D.N.Y. 1968) ................................................................... 16

*Dunk v. Ford Motor Co.*
  (1996) 48 Cal.App.4th 1794 ............................................................... 5, 10, 11

*Eddings v. Health Net, Inc.,*
  No. CV 10-1744-JST RZX, 2013 WL 3013867 (C.D. Cal. June 13, 2013) ........................... 25

*Fischel v. Equitable Life Assur. Society of U.S.,*
  307 F.3d 997 (9th Cir. 2002) ...................................................................... 22

*Garner v. State Farm Mut. Auto. Ins. Co.,*
  No. CV 08 1365 CW (EMC), 2010 WL 1687832 (Apr. 22, 2010) ......................................... 25

*Glass v. UBS Financial Services, Inc.,*
  2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ........................................................ 16

*Hanlon v. Chrysler Corp.*
  (9th Cir. 1998) 150 F.3d 1011 ..................................................................... 18

*Hensley v. Eckerhart*
  (1983) 461 U.S. 424 ............................................................................... 11

*Holman v. Experian Info. Solutions, Inc.,*
  No. 11-CV-0180 CW (DMR), 2014 WL 7186207 (N.D. Cal. Dec. 12, 2014) ............................. 25

*In re Activision Securities Litigation*
  (9th Cir. 1989) 723 F.Supp. 1373 ........................................................ 13, 15, 21

*In re American Bank Note Holographies, Inc., Securities Litigation*
  (S.D.N.Y. 2001) 127 F.Supp.2d 418 ................................................................. 9

iv

**TABLE OF AUTHORITIES**

PAGE(S)

**Cases**

*In re Ampicillin Antitrust Litigation*,
  526 F. Supp. 494 (D.D.C. 1981) ................................................................ 21

*In re Buspirone Patent & Antitrust Litig.*,
  MDL No. 1413, 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003) .............................. 21

*In re Cardizem CD Antitrust Litig.*,
  No. 99-73259 (E.D. Mich. Nov. 25, 2002) ........................................................ 21

*In re Interpublic Sec. Litig.*,
  No. Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. Oct. 27, 2004) ...................... 16

*In re KeySpan Corp. Sec. Litig.*,
  No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068
  (E.D.N.Y. Aug. 25, 2005) ...................................................................... 19

*In re Linerboard Antitrust Litigation*,
  MDL No. 1261, 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. June 2, 2004) ............................... 21

*In re Pacific Enterprises Security Litigation*,
  47 F.3d 373 (9th Cir. 1995) .............................................................. 15, 21

*In re Relafen Antitrust Litig.*,
  1:01cv12239-WGY, (Order and Final Judgment dated Apr 9, 2004, D. Mass.) ....................... 21

*In Re Southern Ohio Correctional Facility*,
  175 F.R.D. 270 (S.D. Ohio 1997) ................................................................ 24

*In re Washington Public Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ........................................................ 18, 19, 22

*Ingram v. The Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) ................................................................. 24

*Kerr v. Screen Extras Guild, Inc.*
  (9th Cir. 1975) 526 F.2d 67 .................................................................... 13

v

<u>T</u>ABLE OF <u>A</u>UTHORITIES

<u>P</u>AGE(S)

**Cases**

*Ketchum v. Moses*
   (2001) 24 Cal. 4th 1122 ................................................................. 10

*Laffitte v. Robert Half International, Inc.*
   (2014) 231 Cal.App.4th 860 .......................................................... 14

*Lealao v. Beneficial Cal., Inc.*
   (2000) 82 Cal.App.4th 19 ................................................... 10, 14, 22

*Lindy Bros. Bldrs., Inc. of Phila. v. American R. & R. San Corp.*
   (3rd Cir. 1973) 487 F.2d 161 ......................................................... 13

*Lindy II*
   (1976) 540 F.2d 102 ....................................................................... 13

*Masters v. Wilhelmina Model Agency, Inc.*,
   473 F.3d 423 (2d Cir. 2006) .......................................................... 16

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375 (1970) ....................................................................... 15

*Nichols v. Smithkline Beecham Corp.*,
   No. Civ. A. 00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) ........................................... 21

*North Shore Hematology-Oncology Assoc., P.C. v. Bristol-Myers Squibb Co.*,
   No. 04 Civ. 248 (D.D.C. Nov. 30, 2004) ....................................... 21

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ................................................... 15, 17

vi

1

**TABLE OF AUTHORITIES**

2

**PAGE(S)**

3 **Cases**

4 *Razilov v. Nationwide Mut. Ins. Co.,*

5    No. 01-CV-1466-BR, 2006 WL 3312024 (D. Or. Nov. 13, 2006)........................................... 24

6 *Serrano v. Priest*

7    (1977) 20 Cal.3d 25 ............................................................................. 11

8 *Singer v. Becton Dickinson and Co.,*

9    08-cv-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010)...................................... 25

10 *Six Mexican Workers v. Arizona Citrus Growers,*

11    904 F.2d 1301 (9th Cir. 1990) .................................................... 15, 16

12 *Smith v. CRST Van Expedited, Inc.,*

13    No. 10-CV-1116- IEG WMC, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013)........................... 25

14 *Trustees v. Greenough*

15    (1881) 105 U.S. 527................................................................... 12

16 *Van Vranken v. Atlantic Richfield Co.,*

17    901 F.Supp. 294 (N.D.Cal. 1995) ......................................... 21, 24, 25

18 *Vincent v. Hughes Air West, Inc.*

19    (9th Cir. 1977) 557 F.2d 759 ...................................................... 11

20 *Vizcaino v. Microsoft Corp.,*

21    290 F.3d 1043 (9th Cir. 2002) ............................................... *passim*

22 *Vranken v. Atlantic Richfield Co.,*

23    901 F.Supp. 294 (N.D. Cal. 1995) ............................................ 21, 24

24 *Waters v. International Precious Metals Corp.,*

25    190 F.3d 1291 (11th Cir. 1999) .................................................... 16

26 *Wershba v. Apple Computer, Inc.*

27    (2001) 91 Cal.App.4th 224 ................................................... 5, 10, 14

28

vii

## TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Williams v. MGM-Pathe Communications*,
  129 F.3d 1026 (9th Cir. 1997) ................................................. 16

*Winslow v. Harold G. Ferguson Corp.*
  (1944) 25 Cal.2d 274 ............................................................. 14

*Young v. Polo Retail, LLC*,
  2007 WL 951821 (N.D. Cal. 2007) ........................................... 16

**Other Authorities**

Conte & Newberg, *Newberg on Class Actions* § 11.24 (4th Ed) .......................... 19, 21

*Manual for Complex Litigation* § 21.311 at p. 413 (4th ed. 2007) .................. 13

R. Pearle, California Attorney Fee Awards (CEB, 1993) §7A ...................... 12

A. Conte, *Attorney Fee Awards*, 2nd Ed. 1993 ........................................... 12

Weil and Brown, <u>California Practice Guide</u>,
  *Civil Procedure Before Trial*, Chapter 14, section 14:145 ..................... 11

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**1.**     <u>**SUMMARY OF MOTION**</u>

Plaintiff seeks final approval of (1) the total maximum settlement amount of **$650,000.00**, (2) attorneys' fees in the amount of **$200,000**, (3) costs in the amount of **$19,952.09**, (4) claims administration costs in the amount of **$17,036**, (5) PAGA penalties in the amount of **$3,750**; and (6) an enhancement award in the amount of **$2,000**, *all of which were fully disclosed to the Class Members and no Class Member objected*.  This case required approximately 389 hours of work by Class Counsel seeking relief for a class of all "Cashers," "Managers," "Friendly Serves," "Maintenance," and "Pump and Nozzle Technicians" employed by Defendants in California at any time between February 16, 2008 and February 10, 2015 ("Class Period").  This litigation involved ongoing investigations, the exchange of written discovery and hundreds of pages of documents, 4 depositions, extensive pleading and motion practice including 2 discovery motions, and an arms-length mediation.  As will be demonstrated herein, Plaintiff's fee request, which represents a little less than 30.8% of the total maximum settlement amount, is fully supported by the use of the percentage fee method and is below Class Counsel's $208,954 lodestar in this case.

Plaintiff also moves for final approval of an enhancement award in the amount of **$2,000**, which was preliminarily approved by the Court on February 11, 2015, to compensate the Class Representative for the time she spent on this case.  Plaintiff played a vital role in representing the other Class Members in this case and spearheading the lawsuit to seek actual monetary relief for them.  Additionally, Plaintiff additionally moves for final approval of payment of **$17,036** to Dahl Administration, LLC for the costs necessary to administer the Settlement.

The requested amounts of attorneys' fees, costs, and enhancement award were fully disclosed to the class members when notice of the Settlement was mailed.  Most importantly, *not a single class member objected to the request for attorneys' fees, costs, and enhancement award*.  The Settlement is fair and reasonable and the product of arms-length, good-faith negotiations by experienced counsel presided over by a highly-qualified mediator specializing in wage-and-hour class actions.  Accordingly, the Court should grant final approval.

1

**2.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

Plaintiff was employed by Defendant Rapid Gas, Inc. as an hourly-paid, nonexempt "Cashier" from approximately June of 2011 until approximately January of 2012 in the State of California.  Plaintiff worked at Defendants' gas station number 48 located at Western Avenue and Melrose Avenue in Los Angeles, California from approximately June of 2011 to approximately August of 2011.  In August of 2011, Plaintiff was transferred to Defendants' gas station number 55, located at Pico Boulevard and Vermont Avenue in Los Angeles, California.  Plaintiff's job duties consisted of performing cash register transactions, providing customer service, counting and balancing inventory, pricing and restocking merchandise and supplies, and cleaning the station.  During her employment with Defendants, Plaintiff routinely performed these work duties before clocking in and after clocking out for her scheduled shift.  Additionally, Plaintiff was required to pay for the purchase and maintenance of a work uniform and the use of her personal cell phone without being reimbursed by Rapid Gas for either.

On February 16, 2012, Plaintiff filed a complaint on behalf of herself and the putative class members alleging that Defendant Rapid Gas, Inc. violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206 and § 207 and sought damages for unpaid overtime, unpaid minimum wages, and unreimbursed business expenses.  Plaintiff filed a First Amended Complaint on October 24, 2012 naming Defendant United El Segundo, Inc. as an additional defendant and a Second Amended Complaint on February 7, 2013 naming Defendant Apro, LLC as an additional defendant.  Plaintiff alleged that because of Defendants' uniform written policies and practices—including requiring the preapproval of overtime, instructing employees to record their scheduled work hours only, instructing employees to complete certain work tasks regardless of when their scheduled shift ended, and mandating compliance with company uniform dress without reimbursing employees for the costs—employees routinely worked off-the clock and/or were not compensated accordingly.  Plaintiff and the putative class members were routinely deprived of the required minimum wage and were not compensated for overtime hours at the minimum required overtime rate.

////

The parties actively litigated this since the filing of the complaint on February 16, 2012. Plaintiff has vigorously prosecuted this case and Defendants have vigorously contested it. Discovery and motion practice has been extensive by both sides.  This discovery and investigation has included, among other things, (a) inspection and analysis of hundreds of pages of documents, including Defendants' Employee Handbook and Time Records and Pay History Reports; (b) analysis of the legal positions taken by Defendants; (c) inspection and analysis of documents produced by Plaintiff and the putative class members; (d) interviews of material witnesses and putative class members; (e) analysis of potential class-wide damages; (f) opposing Defendants' motion to strike the complaint; (g) filing discovery motions; and (h) research of the applicable law with respect to the claims asserted in the actions and the potential defenses thereto.  Thereafter, the parties participated in an extensive private mediation session with the Honorable Edward A. Infante (Ret.) of JAMS, a former Chief Magistrate Judge of the United States District Court for the Northern District of California and well-respected class action mediator, and reached the proposed Settlement.

This proposed Settlement was reached after Class Counsel thoroughly reviewed all available evidence and after arm's-length bargaining by the parties, including attendance at the mediation.  The formal and informal discovery conducted in this case, and the information exchanged through the parties' negotiations, are sufficient to assess reliably the merits of the respective parties' positions and to compromise the issues on a fair and equitable basis.

**3.**   **SUMMARY OF THE SETTLEMENT TERMS**

Under the terms of the preliminarily approved Settlement Agreement, Defendants agreed to pay a total maximum settlement amount of up to $650,000.00 ("Gross Settlement Sum") on a claims-made basis, subject to a 50% floor.  The Net Settlement Sum of $407,250.00 that was made available to be claimed by Class Members who submitted timely and valid Claim Forms ("Claimants") was calculated by deducting the following amounts from the $650,000.00 Gross Settlement Sum:  (1) $200,000 to Class Counsel for attorneys' fees; (2) $25,000 to Class Counsel for litigation costs and expenses; (3) $2,000 to the Class Representative as an enhancement

award; (4) $3,750 to the California Labor and Workforce Development Agency for PAGA Penalties; and (5) $12,000 to the Settlement Administrator to administer the settlement.

**4.      THE CLAIMS ADMINISTRATION PROCESS**

The court-appointed Settlement Administrator, Dahl Administration, LLC ("Dahl"), took all necessary steps to effectuate the claims administration process as set forth in the Court's February 11, 2015 Order Granting Preliminary Approval of Class Action Settlement and Certifying the Settlement Class [Dkt. 71].  Defendants provided a list of the names and mailing addresses for 2,098 Class Members ("Class List") to Dahl.  [Declaration of Kelly Kratz ("Kratz Decl.") at ¶ 4.]  Dahl used the National Change of Address database through the United States Postal Service to obtain updated addresses for all 2,098 Class Members.  [*Id*. at ¶ 5.]

On March 26, 2015, Dahl mailed both a copy of the English and Spanish versions of the Notice of (1) Preliminary Approval of Class Action Settlement; (2) Final Approval Hearing; (3) Right to Object or Opt Out; and (4) Requirement to Return a Claim Form to Receive a Monetary Payment From the Settlement ("Class Notice"), Claim Form, and Opt-Out Form, collectively "Notice Packets" to all 2,098 Class Members.  [*Id*. at ¶ 7.]  Class Members had thirty (30) days thereafter to timely submit a Claim Form, Opt-Out Form, or object to the Settlement.

As of May 1, 2015, Dahl received timely and valid Claim Forms from **516** Class Members ("Claimants").  [*Id*. at ¶ 11.]  The average payment to each of the 516 Claimants will be approximately **$389.74** prior to deducting payroll taxes.  [*Id*. at ¶ 12.]   The maximum payout is anticipated to be $**701.75** prior to deducting payroll taxes.  [*Id*.]  There were ***no objections*** to the Settlement and only six (6) Class Members opted out of the Settlement.  [Kratz Decl. at ¶¶ 9-10, emphasis added.]

**5.      THE COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT.**

The trial court has broad discretion to determine whether a class action settlement is fair and reasonable.  *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 52.  To determine whether the settlement is fair, courts consider relevant factors such as "the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed

and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1801. "The list of factors is not exclusive and the court is free to engage in a balancing and weighing of the factors depending on the circumstances of each case." *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 245. "Due regard should be given to what is otherwise a private consensual agreement between the parties." *Dunk*, *supra*, 48 Cal.App.4th at p. 1801.

The burden is on the proponent of the settlement to show that it is fair and reasonable. *Wershba*, *supra*, 91 Cal.App.4th at p. 245. However, a presumption of fairness exists where: "(1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small." *Dunk*, *supra*, 48 Cal.App.4th at p. 1802. In considering the class settlement, the court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute. *7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1146. The inquiry is not whether the settlement agreement is the best one that class members could have possibly obtained, but whether the settlement taken as a whole is "fair, adequate, and reasonable." *Chavez*, *supra*, 162 Cal.App.4th at p. 55. A settlement need not obtain 100 percent of the damages sought in order to be fair and reasonable. *Wershba*, *supra*, 91 Cal.App.4th at p. 251. Even if the relief afforded by the proposed settlement is substantially narrower than it would be if the lawsuit was to be successfully litigated, that is no bar to a class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation. *Id.*

### A.   The Proposed Settlement Resulted From Arm's-Length Negotiations Based Upon Extensive Investigation and Discovery.

The parties actively litigated this case since it was initially filed on February 16, 2012. There have been ongoing investigations, pleading challenges, the exchange of written discovery

5

and documents and the informal exchange of information prior to and during mediation.[4] Furthermore, the parties engaged in an arm's-length mediation session with the Honorable Edward A. Infante (Ret.) of JAMS, a former Chief Magistrate Judge of the United States District Court for the Northern District of California and a well-respected mediator specializing in California class action litigation.

During the mediation, the parties exchanged information and discussed all aspects of the case including the risks and delays of further litigation, the risks to both parties of proceeding with class certification, the law relating to meal periods, the evidence produced and analyzed, and the possibility of appeals, among other things.[5]  During all settlement discussions, the parties conducted their negotiations at arms' length in an adversarial position.[6]  Arriving at a settlement that was acceptable to both parties was not easy.  Defendants and its counsel felt very strongly about its ability to prevail on the merits and at certification.  And, Plaintiff and Class Counsel believed that they would have obtained class certification and prevailed at trial.[7]  The parties heavily litigated the case up until the mediation.  After the mediation and after much consideration by the parties as to their respective positions and risks in continued litigation, the parties agreed that this case was well suited for settlement given the legal issues relating to Plaintiff's claims, as well as the costs and risks to both sides that would attend further litigation.[8]

The proposed Settlement takes into account the strengths and weaknesses of each side's position and the uncertainty of how the case might have concluded at certification and/or trial.[9] Class Counsel also conducted interviews with numerous Class Members, not to mention the Class Representative.[10]  Class Counsel also reviewed over hundreds of pages of documents produced by both Plaintiff and Defendants and performed significant research into the law concerning Defendants' defenses.[11]  The proposed Settlement was based on this incredibly large

---

[4]      Wheeler Decl. at ¶¶ 4-13; Declaration of Edwin Aiwazian ("Aiwazian Decl.") at ¶¶ 8-11.
[5]      Wheeler Decl. at ¶¶ 4-13.
[6]      *Id.*
[7]      *Id.*
[8]      *Id.*
[9]      *Id.*
[10]     Wheeler Decl. at ¶¶ 4-13; Aiwazian Decl. at ¶ 8.
[11]     Wheeler Decl. at ¶¶ 4-13.

volume of facts, evidence, and investigation.[12]  And, Class Counsel has extensive experience in employment class actions, including extensive experience in California wage-and-hour litigation.[13]

**B.**    **The Risks Inherent in Continued Litigation Favors Final Approval of the Settlement.**

The proposed maximum Settlement of up to **$650,000.00** is well within the range of reasonableness.  Based on the extensive discovery in this case, Plaintiff's counsel have determined that Plaintiff and the Class have a reasonable likelihood of success on their claims for failure to compensate for all hours worked, failure to pay overtime wages, failure to provide meal and rest periods, and failure to provide compliant wage statements.  However, a settlement of this considerable monetary amount is preferable to the multi-tiered risks associated with proceeding in litigation, and is in the putative class members' best interests.  If Plaintiff were to have rejected this $650,000.00 common fund settlement, she would have moved for conditional certification.  Plaintiff is very confident that the Court would have granted conditional certification on her claims.  The risk at certification, however, is impossible to ignore, especially when class counsel must decide between ongoing, protracted litigation, on the one hand, and guaranteed money for the class by way of settlement, on the other.  The state of the law in the state and federal courts on certification is mixed, with many reported decisions supporting certification, and many supporting denial of certification – although certification standards since the United States Supreme Court's decision in *Wal-Mart v. Dukes* are somewhat elevated.

The risks Class Counsel must consider in the face of a large proposed settlement do not end after certification.  After a case is certified, that order is usually subject to de-certification at later stages in the litigation, and defense counsel routinely attack certified cases by filing numerous de-certification motions, whether meritorious or not.  Plaintiff would move for class-wide summary judgment, and summary adjudication, on many of her claims and Defendants' affirmative defenses.  If there were remaining triable issues after hearings on those motions,

---

[12]    *Id.*
[13]    *Id.* at ¶¶ 14-15; Aiwazian Decl. at ¶¶ 2-7.

7

which is common, the parties would need to prepare for a class action trial.  There would be voluminous expert discovery and the parties would present competing trial plans to the Court for consideration in managing a class-wide trial, with Defendants likely arguing throughout the process that any class-action trial is inappropriate, which Plaintiff would vigorously contest throughout.  A class-wide jury trial would likely last several weeks at minimum, and involve party, class-member, expert and percipient witness testimony.  As with all jury trials, there is considerable risk for either party, and that risk is amplified for both sides when the case involves hundreds of class members.

Were Plaintiff to succeed in certifying the class, keeping the case certified and prevailing at a class-action jury trial, in a case of this magnitude, the resulting money judgment would likely be subject to many rounds of appeals, where, again, both sides would face considerable risk – for Plaintiff her hard-fought jury verdict could be overturned, as could a favorable ruling for the defense.  In addition, money judgments must be bonded, and interest accrues during the pendency of appeal.  The Class Members still would not have yet received any money during the appeal process, and Class Counsel could have to spend years defending its trial court judgment in possibly several rounds of appeal.

There are also business-related risks associated with taking a class action case to judgment, such as a Defendants' possible bankruptcy filing and the resulting collection efforts as the Class Members become judgment creditors.  Moreover, if the judgment is too high, defendants could decide to lay off massive amounts of the class member employees, and close some of its operations, a result that does not help either side.

While there are considerable risks associated with class certification, a class action trial, and resulting appeals, Plaintiff's Counsel have taken these types of large class action cases all the way to the jury trial phase, and stood (and stand) ready and willing to do so again in this case.  That said, when presented with a six-figure settlement that will benefit a large group of relatively low wage earners in the very near future, the risk of later potentially recovering nothing, many years later, must be candidly recognized and evaluated.  For those reasons, Plaintiff's Counsel is confident this proposed settlement is in the best interests of the class.

### C.   The Settlement is Fair, Reasonable, and Adequate.

The Settlement Fund of up to $650,000.00 represents an excellent resolution of this case. The proposed Settlement was calculated using information and data uncovered through formal discovery, case investigation and the exchange of information in the context of mediation.  The proposed Settlement takes into account the potential risks and reward inherent in any case and in particular with this case.  Moreover, considering all of the facts in this case the Settlement amount represents a substantial global recovery for all Settlement Class Members.

Claimants will receive their claimed share of the Settlement based upon the number of days he or she actually worked during the Class Period.  On average, Claimants will receive approximately **$389.74** from the Settlement, and up to a maximum of **$701.75**.  [Kratz Decl. at ¶ 12.]

At the final approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by experienced and competent class counsel."  *In re American Bank Note Holographies, Inc., Securities Litigation* (S.D.N.Y. 2001) 127 F.Supp.2d 418, 429-30.  In light of the above considerations, Class Counsel believes that the proposed Settlement as a whole is fair, reasonable, and in the best interest of the Settlement Class Members.  Although the recommendations of Class Counsel are not conclusive, the Court can properly take the recommendations into account, particularly if Class Counsel appears to be competent, has experience with this type of litigation, and significant discovery and investigation has been completed.  Conte & Newberg, *Newberg on Class Actions* §11.47 (4th Ed.). Accordingly, the Court should grant final approval of the proposed Settlement.

### D.   The Settlement Class Was Represented by Competent Counsel.

Class Counsel has extensive experience in employment class action law, including extensive experience in wage-and-hour class action litigation.[14]  The R. Rex Parris Law Firm and Lawyers *for* Justice, PC have been appointed class counsel in dozens of employment class action cases, and have recovered hundreds of millions of dollars for California employees.[15]  Both

---

[14]   Wheeler Decl. at ¶¶ 15-16.
[15]   See **Exhibit "C"** to Wheeler Decl.

9

parties' counsel were capable of assessing the strengths and weaknesses of the Settlement Class Members' claims against Defendants and the benefits of the proposed Settlement under the circumstances of the case and in the context a private, consensual settlement agreement.

### E.   There Are No Objections to the Settlement.

The Settlement was well received by the Class – *not a single class member objected to the Settlement*. [Kratz Decl. at ¶ 10, emphasis added.]  Specifically, no objections were made as to the gross amount of the Settlement, the request for an enhancement award to Plaintiff, or the request for attorneys' fees and costs.  California courts have consistently found that a small number of objectors indicates the class' support for a settlement and strongly favors final approval.  *Wershba*, *supra*, 91 Cal.App.4th at p. 250-251 (final approval granted despite 20 objectors); *7-Eleven Owners*, *supra*, 85 Cal.App.4th at p. 1152-1153 (final approval granted despite 9 objectors).

The lack of any objections speaks volumes about the fairness, reasonableness, and adequacy of this Settlement.  Accordingly, the Settlement is presumed as a whole to be fair, reasonable, and adequate and the Court should grant final approval of the entire Settlement. *Dunk*, *supra*, 48 Cal.App.4th at p. 1802.

### 6.   LEGAL STANDARD FOR ATTORNEYS' FEES AND IN A CLASS ACTION SETTLEMENT

The governing principles, as well as a survey of attorney fee jurisprudence (both in California and throughout the country), are set out in *Lealao v. Beneficial Cal., Inc.* (2000) 82 Cal.App.4th 19, 41.  Trial courts have "wide latitude" in assessing the value of attorneys' fees and their decisions will "'not be disturbed on appeal absent a manifest abuse of discretion.'"  *Id*. Indeed, it is long settled that the "experienced trial judge is the best judge of the value of professional services rendered in his court . . . ."  *Ketchum v. Moses* (2001) 24 Cal. 4th 1122, 1132.

California law provides that attorney fee awards should be equivalent to fees paid in the legal marketplace to compensate for the result achieved and risk incurred.  *See Lealao*, *supra*, 82 Cal.App.4th at p. 47.  In *Lealao*, the court held that when an action leads to a recovery that can be "monetized" with a reasonable degree of certainty, the trial court should "ensure that the fee

10

awarded is within the range of fees freely negotiated in the legal marketplace in comparable litigation." *Id.* at p. 50. Fee awards that are too small will "chill the private enforcement essential to the vindication of many legal rights and obstruct the representative actions that often relieve the courts of the need to separately adjudicate numerous claims." *Id.* at p. 53. In cases where class members present claims against a maximum settlement fund and the settlement agreement provides that the defendant agrees to paying the attorneys a percentage of the same, use of that percentage method is appropriate. *Id.* at p. 32. An attorney fee motion should not turn into "a second major litigation." *Id.* at p. 31 (citing *Hensley v. Eckerhart* (1983) 461 U.S. 424, 437).

With regard to the contingent fee request herein, Class Counsel seeks a fee award for their successful prosecution and resolution of this action, calculated as a percentage of the total value of benefits afforded the Class Members by the Settlement. *Serrano v. Priest* (1977) 20 Cal.3d 25, 34; *Boeing Co. v. Van Gernert* (1980) 444 U.S. 472, 478; *see also Vincent v. Hughes Air West, Inc.* (9th Cir. 1977) 557 F.2d 759, 769. Where the amount of a settlement is a "certain easily calculable sum of money," California courts may calculate attorneys' fees as a reasonable percentage of the settlement created. Weil and Brown, <u>California Practice Guide</u>, *Civil Procedure Before Trial*, Chapter 14, section 14:145; *Dunk v. Ford Motor Co.* (1996) 48 Cal. App. 4th 1794, 1808. The purpose of this equitable doctrine is to spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone. *Vincent*, *supra*, 557 F.2d at p. 769.

## A. <u>The Percentage Fee Method</u>

### 1. **The Common Fund Doctrine**

The Common Fund Doctrine provides that when a litigant's efforts create a fund from which others derive benefits, the litigant may require the passive beneficiaries to compensate those who created the fund. Both State and Federal courts have embraced this doctrine. *Serrano*, *supra*, 20 Cal.3d at p. 35; *Crampton v. Takegoshi* (1993) 17 Cal.App.4th 308, 317; Vincent, supra, 557 F.2d at p. 769.

////

The Common Fund Doctrine is the oldest exception to the American rule of fee shifting.

> The Common Fund exception is grounded in the historic power of equity to permit the trustee of a fund or property (or a party preserving or recovering a fund for the benefit of others, as well as himself or herself) to recover costs, including attorneys' fees. Those costs and fees are paid out of the fund or property itself, or directly from the other parties enjoying the benefit.  R. Pearle, California Attorney Fee Awards (CEB, 1993) §7A, p. 7-5.

In the present case, it is clear that the payments to the claiming class members constitute a substantial common fund.  Class Members who submitted a Claim Form will receive a settlement payment.  Under the foregoing doctrine, courts have consistently recognized that class litigation is increasingly necessary to protect the rights of individuals whose injuries and/or damages are too small to economically justify individual representation.

Accordingly, in determining a reasonable common fund fee award, courts award fees to serve as an economic incentive for lawyers to bring class action litigation in order to achieve increased access to the judicial system for meritorious claims and to enhance deterrents to wrongdoing.  This is especially true in situations where the multiple similar alleged wrongs would not be economically feasible to pursue individually, such as in this case.  See A. Conte, *Attorney Fee Awards*, 2nd Ed. 1993, 104, p.6.

When this case was originally filed, not only was it inescapably contingent, but the prospect of a long drawn-out battle with Defendant that retained premier employment defense representation was a certainty.  That was exactly what happened.  By taking on this "battle" on a contingency basis, counsel risked substantial economic loss if they were not successful.  This substantial risk is the reason that the courts approve the use of the percentage method when a common fund is created by the efforts of Class Counsel.

### B.   Evolution of the Percentage Fee Method

Ever since the Common Fund Doctrine found its genesis in *Trustees v. Greenough* (1881) 105 U.S. 527, courts have awarded fees on a percentage basis.  In arriving at reasonable percentage fee awards, courts considered a variety of factors, but focused on the particular circumstances of the case in fixing a percentage above or below a benchmark.  During the 1960s

12

and early 1970s, following the 1966 amendments to Rule 23, settlements began increasing significantly and the fees awarded pursuant to the percentage method were questioned.  Then, in 1973, the revision for the <u>Manual for Complex Litigation</u> proposed that all common fund fee awards be based on time reasonably expended on the action.  This concept was then embraced in *Lindy Bros. Bldrs., Inc. of Phila. v. American R. & R. San Corp.* (3rd Cir. 1973) 487 F.2d 161, and *Lindy II* (1976) 540 F.2d 102.  Thereafter, a large number of courts adopted Lindy's rationale, and courts generally began awarding fees based on the actual time expended (the lodestar) in conjunction with a multiplier of between 2 and 4.  *Kerr v. Screen Extras Guild, Inc.* (9th Cir. 1975) 526 F.2d 67.

Courts have recently rejected the lodestar approach and moved toward fees based upon a percentage of the common fund.  As the court noted in *In re Activision Securities Litigation* (9th Cir. 1989) 723 F.Supp. 1373, 1375:

> The question this court is compelled to ask is, Is this process necessary? Under a cost-benefit analysis, the answer would be a resounding, No!  Not only do the *Lindy Kerr* and *Johnson* analyses consume an undue amount of court time with little resulting advantage to anyone, but, in fact, it may be to the detriment of the class members.  They are forced to wait until the court has done a thorough, conscientious analysis of the attorney's fee petition.

Accordingly, since *Blum v. Stenson* (1984) 465 U.S. 886, where the Supreme Court approved a percentage of the fund as being an appropriate fee award, courts have increasingly rejected the lodestar approach.  This trend recognizes the fact that compensating class counsel in class litigation on a percentage basis (common fund) makes good sense because 1) it is consistent with the private marketplace where contingent fee attorneys are customarily compensated on such a basis; 2) it aligns the interests of class counsel and absent class members in achieving the maximum possible resolution of the case; and 3) it augers for the most efficient and expeditious resolution of the litigation by providing an incentive for early, yet reasonable, settlement.  The award in this case meets all those criteria such that it should be made on a percentage basis.

////

C.    **The Settlement Has Created A Common Fund From Which A Percentage Fee Should Be Awarded**

Under the terms of the Settlement, the Class Members will share in a substantial settlement amount, which includes all settlement payments, Class Counsel's attorneys' fees and costs, the costs of claims administration, taxes, and a service enhancement award to the Class Representatives.  A common fund award is not dependent on a determination of the actual amount claimed out of the fund by those entitled.  It is the creation of the fund that is the crucial fact.  Indeed, in *Winslow v. Harold G. Ferguson Corp.* (1944) 25 Cal.2d 274, the California Supreme Court expressly held that "it is equitable that [the attorney's] compensation and expenses should come from the entire fund saved for all classes concerned before it is distributed."  *Id.* at p. 284.  Likewise, *Lealao* expressly recognizes that "in a traditional common fund case, [a percentage-based fee] may be calculated on the basis of the total fund made available rather than the actual payments made to the class."  *Laffitte v. Robert Half International, Inc.* (2014) 231 Cal.App.4th 860, (approving $6,333,333.33 in attorneys' fees for a $19,000,000 settlement); *Lealao*, *supra*, 82 Cal.App.4th at p. 51; *see also Boeing*, *supra*,  444 U.S. at p. 478 ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole").

In *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, the court definitively decided this issue.  In determining reasonable attorneys' fees, the court valued a settlement based on the  total value of the  settlement made  available to class members, and rejected an objection by certain class members that the settlement could not be valued (and therefore the fees not awarded) until the exact amount of the claims made could be determined.  *Id.* at p. 247.

Where there is one maximum amount to be paid to the class and the attorneys' fees by agreement represent a percentage of that sum, employment of the percentage method is the proper method.  *Laffitte, supra*, 231 Cal.App.4th 860; *Lealao*, *supra*, 82 Cal.App.4th at p. 33.  If the percentage method were not employed here as to the maximum potential payment, then Class Members would be unjustly enriched at the expense of Class Counsel.  One reason the

14

percentage method is employed is to avoid such unjust enrichment.  *See Brytus v. Spang & Co.* (3rd Cir. 2000) 203 F.3d 238, 232.

### 7.   CLASS COUNSEL'S REQUEST FOR APPROXIMATELY 30.8% OF THE SETTLEMENT IS JUSTIFIED BY NINTH CIRCUIT PRECEDENT

Class counsel seeks the approval of an attorneys' fee award equal to a little less than 30.8% of the total value of the settlement fund established by the settlement agreement.  An award of attorneys' fees as a percentage of a fund established by a settlement is well-established in Ninth Circuit jurisprudence; the Ninth Circuit's benchmark for such common fund awards is 25% of the common fund.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Pacific Enterprises Security Litigation*, 47 F.3d 373, 379 (9th Cir. 1995); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989).

This "common fund" doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs out of the fund, has long been a staple of class action settlements in federal courts generally: "a lawyer who recovers a common fund for the benefit of persons other than…his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970).[16]  Federal courts, and particularly the Ninth Circuit, have endorsed the percentage method as a fair way to calculate a reasonable fee when contingency fee litigation has produced a common fund.  *See*, *e.g.*, *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (under common fund doctrine, "reasonable fee is based on a percentage of the fund bestowed on the class"); *Six Mexican Workers*, 904 F.2d at 1311 (common fund fee is generally "calculated as a percentage of the recovery"); *Paul, Johnson* 886 F.2d at 272.

---

[16]     The common fund doctrine rests on the understanding that attorneys should normally be paid by their clients, and that unless attorneys' fees are paid out of the common fund where the attorneys' unnamed class member "clients" have no express retainer agreement, those who benefited from the fund without contributing to those who created it would be unjustly enriched.  *Boeing*, 444 U.S. at 478.

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *See*, *e.g.*, *Dolgow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968).  Courts in this Circuit have consistently adhered to these teachings. *See In re Interpublic Sec. Litig.*, No. Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *30-31 (S.D.N.Y. Oct. 27, 2004) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable fee – set by the court – to be taken from the fund.'") (citation omitted).  The "[d]etermination of 'reasonableness' is within the discretion of the district court." *Id* at *31.

The Ninth Circuit has made clear that when a fund is established which makes a pool of money available to a class of persons, the attorneys' fees for the plaintiffs' counsel are properly calculated as a percentage of the entire fund.  *See Williams v. MGM-Pathe Communications*, 129 F.3d 1026, 1026-27 (9th Cir. 1997).  In *Boeing*, the Court concluded that the attorneys for a successful class may recover a fee based on the entire common fund created for the class, even if some class members make no claims against the fund so that money remains in it that otherwise would be returned to the defendants.  *Boeing*, 444 U.S. at 480-81; *see also Six Mexican Workers*, 904 F.2d at 1311; *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2006); *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999); *Glass v. UBS Financial Services, Inc.*, 2007 WL 221862, *16 (N.D. Cal. Jan. 26, 2007); *Young v. Polo Retail, LLC*, 2007 WL 951821, *8 (N.D. Cal. 2007).

Substantial fee awards in successful cases, such as the present action, encourage and support meritorious class actions, and thereby promote private enforcement of, and compliance with federal laws.  The continued viability of wage-and-hour laws, like the viability of other remedial statutes, depends on the ability of private litigants to seek redress through litigation. The success of these lawsuits depends in part on the availability and willingness of attorneys to bring them.  Substantial fee awards also encourage reputable law firms with skilled, capable

attorneys to take the risk of serving as "private attorneys general."  Indeed, "[a]bsent an award of fees that adequately compensates Class Counsel, the entire purpose and function of class litigation under Rule 23 of the Federal Rules of Civil Procedure will be undermined and subverted to the interest of those lawyers who would prefer to take minor sums to serve their self-interest rather than obtaining real justice on behalf of their injured clients." *Allapattah Services, Inc. v. Exxon Corp.*, 454 F.Supp. 2d 1185, 1217 (S.D.Fla. 2006).

A.      AN UPWARD ADJUSTMENT OF THE NINTH CIRCUIT'S BENCHMARK IS APPROPRIATE

Although the Ninth Circuit established 25% as a "benchmark" for attorneys' fee awards that are established out of a common fund, where, as here, circumstances merit it, "[t]hat percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in [the] case."  *Paul, Johnson*, 886 F.2d at 272.  In this case, given the results achieved and the difficulties attendant in litigating this case, an upward adjustment is warranted.

In *Vizcaino*, the Ninth Circuit laid out the factors to be considered in adjusting a fee award from the "benchmark."  *See Vizcaino*, 290 F.3d at 1047-1050.  These are: (i) the size of the fund (and thus the resulting size of the percentage fee award); the quality of the results obtained by Plaintiff's counsel; (ii) the risk taken on by Plaintiff's counsel in accepting and pursuing the case with no guarantee of victory or being paid for their time and effort; (iii) incidental or non-monetary benefits conferred by the settlement; (iv) the effort expended by Plaintiff's counsel; (v) Plaintiff's counsel's reasonable expectations based on the circumstances of the case and fee awards in other cases; and, to a certain extent, the percentage fee award originally contracted for between Plaintiff and Plaintiff's counsel.  *Id*  A consideration of the *Vizcaino* factors shows that Plaintiff's counsel's request for a little less than 30.8% the total value of the settlement is exceedingly reasonable.

1.      The Risks Assumed by Class Counsel Favor the Fee Award Sought

Plaintiff's counsel assumed a very real risk in taking on this case.  Plaintiff, through his counsel, took on a national corporation with far more resources than Plaintiff's counsel.

Plaintiff's counsel took the case on a contingency basis, and invested time, effort, and money with no guarantee of any recovery.  In cases where the "recovery is far from certain," as here, an award of more than 25% of the common fund as attorneys' fees is appropriate.  *In re* Washington *Public Power*, 19 F.3d at 1302; *see also Vizcaino*, 290 F.3d at 1048.

Plaintiff's Counsel proceeded knowing there was a chance that Defendant would prevail and that even if Plaintiff prevailed, there was a chance that the case would take years to bring to trial and would not be resolved without an appeal.  The risk of no recovery in complex class actions of this type is very real.  There are numerous cases where Plaintiff's counsel in contingent-fee cases such as this one, after devoting thousands of hours and advancing significant sums in out-of-pocket expenditures, received no compensation whatsoever.  *See, e.g.*, *Armstrong v. Whirlpool Corp.*, 2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007) (denying class certification of racial harassment claims); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The risk of maintaining class action status throughout the trial" was an important favor in approving the class action settlement.).  From the outset Defendant has adamantly denied any liability and continues to do so today.

This was a complicated and uncertain case in which Defendant vehemently contested liability.  The risks of the case and litigation obstacles were great, but Plaintiff's counsel, nevertheless, achieved an extremely successful result, and thus, this first *Vizcaino* factor militates in favor of the fee award sought by Plaintiffs' counsel.  *See also* Local Rule 54-293 factors (2) ("the novelty and difficulty of the questions presented"); (3) ("the skill requisite to perform the legal service properly"); and (10) ("the 'undesirability' of the action").

### 2. Class Counsel Obtained an Excellent Result for the Class

The results obtained by Plaintiffs' counsel here are remarkable.  The total value of this Settlement is $650,000, which Plaintiff's Counsel believes is substantial.  With a settlement fund of $650,000, a Claimant will receive a Settlement Award of approximately $389.74 on average as an individual award.  This is remarkable because the settlement compensates the Class Members for relatively small amounts of unpaid time.  As a result of the settlement, many of the Class Members will be provided with a recover for claims that may have been too small for

18

them, or for any attorney, to pursue on an individual basis.  Thus, the second *Vizcaino* factor greatly favors Plaintiff's counsel's fee request.

The fairness of this fee award is further supported by the high quality of Plaintiff's counsel's legal representation as described above and in the declaration.  Plaintiff's counsel's highly-informed, diligent, and efficient prosecution of this matter positioned Plaintiff to successfully settle this case, affording redress to the entire proposed settlement class, and avoided the inevitable expense and risk attendant with protracted litigation.

The quality of opposing counsel is also important in evaluating the quality of Plaintiff's Counsel's work.[17]  Here, as set forth above, Defendant was represented by experienced and skilled lawyers from a law firm with a deserved reputation for vigorous advocacy in the defense of complex employment class action cases.  The ability of Plaintiff's Counsel to obtain this Settlement in the face of such formidable legal opposition confirms the quality of Plaintiff's Counsel's representation.  Accordingly, this factor strongly supports the requested fee.

### 3.    Class Counsel's Award is Relatively Modest

Here, Plaintiff's counsel seeks less than 30.8% of the value of the settlement fund of $650,000.00.  Most Ninth Circuit cases consider the size of the settlement fund for purposes of evaluating fee requests, in relation to how large it renders the resulting fee award.  *See, e.g., In re Washington Public Power*, 19 F.3d at 1297 ("the percentage of an award generally decreases as the amount of the fund increases").  The fee request is less than the Net Settlement Sum that will be paid out to the Claimants.  Accordingly, the fee request is in line with Ninth Circuit precedent.

### 4.    Class Counsel Obtained Swift and Efficient Relief for the Class

While the *Vizcaino* Court considered the protracted litigation in that case, it stressed: "We do not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief."  *Vizcaino*, 290 F.3d at 1050, n. 5.  In fact, the Court acknowledged that using time expended as a proxy for the effort expended on or

---

[17]    *See In re KeySpan Corp. Sec. Litig.*, No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068, at *35 (E.D.N.Y. Aug. 25, 2005) ("The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work.").

19

success of a case "creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee," and that such an evaluation "does not reward early settlement." *Id.* Here, Class Counsel achieved a substantial benefit for class members in a very timely fashion, providing class members with substantial and certain relief much sooner than if this matter had been extensively litigated.

Moreover, Class Counsel did not sacrifice due diligence in achieving an efficient resolution of this case. As discussed above, Class Counsel reviewed hundreds of relevant documents produced by Defendant, as well as compensation and time-keeping-related records for employees in the proposed Settlement Class.[18] In addition, prior to the mediation, Plaintiff's counsel conducted interviews of Class Members concerning their claims. Hence, Plaintiff's counsel's request for fees is reasonable here.

### 5. The Skill and Reputation of Plaintiff's Counsel Justifies the Fee Requested

As shown in the accompanying declaration, Class Counsel are recognized leaders in employment class actions, and put the full use of their skill and experience to work in the service of Plaintiff and the class in this case.[19] As a result, these factors favor the fee award sought by Class Counsel. The R. Rex Parris Law Firm and Lawyers *for* Justice, PC has dedicated themselves to this case. Class Counsel are nationally-recognized trial and class-action attorneys and employed their knowledge, skill, and experience in bringing to conclusion a very favorable result in a unique, hard-fought litigation.[20] The goal achieved is the extraordinary result of obtaining $650,000.00 for the Class. Class counsel respectfully requests an award of attorneys' fees equal to a little less than 30.8% of that amount.

### B. FEDERAL COURTS ROUTINELY AND REGULARLY AWARD FEES IN EXCESS OF THE FEE REQUESTED

Class Counsel seeks a little less than 30.8% of the total value of the fund established by the settlement as compensation for their fees. This amount is commensurate with federal court --

---

[18]   Wheeler Decl. at ¶¶ 3-4.
[19]   *Id.* at ¶ 14.
[20]   *Id.*

20

and, in particular, Ninth Circuit -- precedent: case surveys reflect that awards of this amount, or more, are common.  Newberg, <u>Newberg on Class Actions</u>, 4th Ed., 2002 §14.6; *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 297-298 (N.D.Cal. 1995) (citing cases awarding an award of 33%).  Indeed, many courts have approved common fund fee awards equivalent to or greater than the percentage requested here, and even when the award results in a substantial multiplier.  *See, e.g., In re Pacific Enterprises*, 47 F.3d at 379 (affirming an award equal to 33% of the common fund); *In re Activision*, 723 F. Supp. at 1375 (32.8% of the common settlement fund); *In re Ampicillin Antitrust Litigation*, 526 F. Supp. 494 (D.D.C. 1981) (45% of settlement fund); *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*, 480 F.Supp. 1195 (S.D.N.Y. 1979), *aff'd* 622 F.2d 1106 (2nd Cir. 1980) (53% of settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420 (S.D.N.Y. 1981) (36% of settlement fund); *In re Buspirone Patent & Antitrust Litig.*, MDL No. 1413, 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003) (multiplier was more than eight times counsel's lodestar) ("BuSpar"); *North Shore Hematology-Oncology Assoc., P.C. v. Bristol-Myers Squibb Co.*, No. 04 Civ. 248 (D.D.C. Nov. 30, 2004), (multiplier was well over eight times counsel's lodestar); *In re Relafen Antitrust Litig.*, 1:01cv12239-WGY, (Order and Final Judgment dated Apr 9, 2004, D. Mass.) (multiplier of 4.88 awarded); *In re Cardizem CD Antitrust Litig.*, No. 99-73259 (E.D. Mich. Nov. 25, 2002) (approving multiplier of approximately 3.7); *Nichols v. Smithkline Beecham Corp.*, No. Civ. A. 00-6222, 2005 WL 950616, at *24 (E.D. Pa. Apr. 22, 2005) (approving multiplier of 3.15); *In re Linerboard Antitrust Litigation*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at * 49 (E.D. Pa. June 2, 2004) (approving 2.66 multiplier).

**8.    THE ATTORNEYS' FEES SOUGHT ARE ALSO APPROPRIATE UNDER THE LODESTAR/MULTIPLIER METHOD OF FEE CALCULATION**

Ninth Circuit law regards both the percentage and lodestar methods as acceptable ways to calculate fees for class counsel in class action settlements.  *Vizcaino*, 290 F.3d at 1047; *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1006-1008 (9th Cir. 2002).  Thus, while some courts use the lodestar to "check" the reasonableness of a fee request, an examination of Class Counsel's lodestar is unnecessary here.  *Vizcaino*, 290 F.3d at 1047.  But even if this Court

21

were to apply a lodestar check on the percentage fee award sought, approximately 30.8% of the Settlement Fund is an appropriate fee award in this case.[21]

Class Counsel provided a chart concerning the time worked on the case with a description of the work they performed and the amount of time spent on each task (which, as shown below, are the elements that determine Plaintiff's counsel's lodestar).[22]  This chart shows that the fee award requested would be reasonable under the lodestar check as well as the percentage method.

"Under the lodestar method, the court multiplies a reasonable number of hours by a reasonable hourly rate." *Fischel*, 307 F.3d at 1006.  As with the percentage method, "a court can adjust the lodestar upward or downward based on certain factors." *Id*. at 1007.  Increasing the lodestar is done by the inclusion of a "multiplier." *Vizcaino*, 290 F.3d at 1051.  The *Vizcaino* Court found that 83 percent of courts in the common fund cases it surveyed assessed a multiplier to class counsel's lodestar of between 1.0 and 4.0.  *Id*. at 1051, n. 6.

Here, Class Counsel's lodestar by the time of the final approval hearing will be at $208,954 without any multiplier.[23]  As the Ninth Circuit has stated, "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *Vizcaino*, 290 F.3d at 1051 (quoting *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994)).  Plaintiff's counsel obtained this settlement efficiently, affording redress to the Class Members swiftly, without forcing them to wait through protracted, and risky, litigation.  Plaintiff's counsel was able to settle this case for a substantial amount under the circumstances, especially considering the difficulty of the case and Defendant's defenses.  Plaintiff's counsel includes experienced class action attorneys.[24]  They used their full abilities to achieve the successful result here.  As shown above, the award requested here is fully in line with awards

---

[21]      While federal courts generally do not include multipliers in fee awards, "[t]he bar against risk multipliers in statutory fee cases does not apply to common fund cases." *Vizcaino*, 290 F.3d at 1051.  In any event, Plaintiff's counsel does not seek fees through the use of a multiplier in this case; this section is merely to show that the award is imminently reasonable when checked by the lodestar/multiplier method.  Moreover, Plaintiff's complaint includes claims under California law, which does not bar the use of multipliers to assess attorneys' fee awards. *See Lealao v. Beneficial California, Inc.*, 82 Cal.App.4th 19, 26 (2000).
[22]      Wheeler Decl. at ¶ 6.
[23]      **Exhibit "A"** to Wheeler Decl.
[24]      Wheeler Decl. at ¶ 14.

and multipliers employed in much larger cases, where the fees requested are many times the fees requested here.

The rates submitted by Class Counsel "were what they took to be market rates, in other words, rates that did not already reflect an expectation of excellent results." *Vizcaino*, 290 F.3d at 1051. Class Counsel achieved excellent results here; "[t]hus, a multiplier was appropriate in this case." *Vizcaino*, 290 F.3d at 1051.

**9.    COSTS TO BE REIMBURSED TO CLASS COUNSEL**

As set forth in the declaration of Class Counsel, the total costs Class Counsel has incurred by the time of final approval will be approximately **$19,952.09**.[25] The costs incurred include the costs for filing the complaint, the cost to take and defend depositions and to obtain certified copies of the deposition transcripts, mediation costs with a reputable wage-and-hour class action mediator, traveling to the mediation, as well as costs relating to Class Counsel traveling to court appearances. These expenses are reasonable and necessary in the prosecution of this class action. Accordingly, Class Counsel requests that the Court order reimbursement of the costs incurred by Class Counsel in the total amount of **$19,952.09** to Class Counsel for litigation costs and expenses.

**10.    PAYMENT TO DAHL ADMINISTRATION, LLC IS FAIR AND REASONABLE.**

As set forth in the Declaration of Kelly Kratz, a Principal at Dahl Administration, LLC ("Dahl"), the total costs incurred by Dahl for the notice and claims administration is $17,036. [Kratz Decl. at ¶ 13.] This cost incurred are for mailing the Notice Packages to 2,098 Class Members, performing address traces on undeliverable addresses, re-mailing the Notice Packages to any new addresses obtained, maintaining a toll-free telephone number to process class member inquiries, handling Class Member inquiries, setting up a qualified settlement fund account, calculating each Claimant's individual settlement awards and preparing the associated tax forms, and mailing settlement checks and tax documents. The Settlement Administrator is a necessary third-party to the settlement process. Accordingly, the Court should grant final approval of payment of $17,036 to Dahl Administration, LLC.

---

[25]    *Id*. at ¶ 16.

23

**11.**   <u>THE SERVICE ENHANCEMENT AWARD IS FAIR AND REASONABLE</u>

Plaintiff requests that the Court approve the request for a service enhancement award in the total amount of $2,000 to Plaintiff Carla Leiva for her efforts in assisting in this class action lawsuit.  It is within the Court's discretion to award to the Class Representative for her efforts and work.  *Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995) (approving $50,000 participation award to a single class representative).  The criteria courts may consider in determining whether to make an incentive award include:  1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.  *Id*.

Service or incentive payments to named plaintiffs are frequently awarded to recognize their time and efforts, and the risks they undertake on behalf of a class.  Courts routinely award service payments, which are intended to advance public policy by encouraging individuals to come forward and perform their civic duty in protecting the rights of the class, as well as to compensate class representatives for their time, effort and inconvenience.  *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001), *quoting In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.").  In the *Ingram* case, the Court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class.  *Id* at 694; *see also Van Vranken*, 901 F. Supp. at 300 (N.D. Cal. 1995) (approving $50,000 participation award for the representative Plaintiff).

Incentive awards are particularly appropriate where the "class representative[ ] remain[s] fully involved and expended considerable time and energy during the course of the litigation."  *Razilov v. Nationwide Mut. Ins. Co.,* No. 01-CV-1466-BR, 2006 WL 3312024, at *4 (D. Or.

Nov. 13, 2006).  Ms. Leiva spearheaded this lawsuit.[26]  She committed time to the litigation by reviewing pleadings, communicating with class counsel during the prosecution of this case, and sitting for deposition, warranting an enhancement award.[27]  *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, *17 (Apr. 22, 2010) (approving a $20,000 award where plaintiff "made herself available for deposition on two separate occasions; met with Class Counsel on six separate occasions; attended the full-day Court-ordered appraisal hearing; spoke with Class Counsel and their staff on many occasions; reviewed all major pleadings; and repeatedly responded to interrogatories and document requests.")

The enhancement award is further justified because Ms. Leiva has agreed to the full general release of her claims against Defendant, which is much broader than the release that applies to the class.[28]  Broad releases of the named plaintiff's claims that go beyond what is required of the class members are taken into account when considering the reasonableness of the incentive award.  *See Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*, No. 12-CV-05259-JST, 2014 WL 2967474, at *3 (N.D. Cal. June 30, 2014); *Holman v. Experian Info. Solutions, Inc.*, No. 11-CV-0180 CW (DMR), 2014 WL 7186207, at *6 (N.D. Cal. Dec. 12, 2014) (finding that the class representative is entitled to an incentive award "for his service to the class and for his broad release of all claims, known or unknown, against [the defendant]"); *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST RZX, 2013 WL 3013867, at *7 (C.D. Cal. June 13, 2013) (approving the incentive award in part because the plaintiff executed "a general release that will resolve her individual claims, as well the class claims").

Notably, the award is also well within the acceptable range awarded in similar cases. *See, e .g., Van Vranken v. Atlantic Richfield*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (holding that incentive awards of $50,000 to each named plaintiff was fair and reasonable); *Singer v. Becton Dickinson and Co.*, 08-cv-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) (finding class representative award of $25,000 reasonable); *Smith v. CRST Van Expedited, Inc.,* No. 10-CV-1116- IEG WMC, 2013 WL 163293, at *6 (S.D. Cal. Jan. 14, 2013) (holding

---

[26]     Leiva Decl. at ¶ 5.
[27]     *Id.* at ¶¶ 6-15.
[28]     Leiva Decl. at ¶ 16.

25

1   that incentive awards of $15,000 for each of the three named representatives was "well within

2   the range awarded in similar cases"); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913–14

3   (S.D.Ohio 2001) (approving an award of $50,000 where the class representative "has been

4   instrumental in bringing [the] lawsuit forward" and "has performed numerous tasks in

5   association with [the] litigation").  The proposed $2,000 service enhancement award to Ms.

6   Leiva, which was fully disclosed to the Class Members in the Notice and to which nobody

7   objected, is therefore appropriate and justified as part of the overall settlement.

8   **12.**   <u>CONCLUSION</u>

9        Plaintiff respectfully requests that the Court grant final approval of the **$650,000.00** class

10  action settlement in its entirety, the requested attorneys' fees in the amount of **$200,000** to Class

11  Counsel for **389** hours worked on the case, costs in the amount of **$19,952.09** to Class Counsel,

12  an enhancement award in the amount of **$2,000** to Plaintiff Carla Leiva, claims administration

13  costs in the amount of **$17,036** to Dahl Administration, LLC.; enter final judgment in this action;

14  and retain continuing jurisdiction over the enforcement and administration of the Settlement.

15  DATED:  May 5, 2015                          **R. REX PARRIS LAW FIRM**

16

17                                         By: _/s/ Alexander. R. Wheeler____
                                                Alexander R. Wheeler
18                                              Attorneys for Plaintiff and the
                                                Settlement Class
19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28